Plaintiffs in this case are the widow and daughter of Albert N. Aucoin who died on April 11, 1942. The daughter, according to the allegations of the petition, has qualified as the administratrix of his succession and she and her mother have accepted the succession with benefit of inventory, the widow as surviving spouse in community and the daughter as sole heir.
In their petition herein, they set out that during his lifetime, Albert Aucoin was, and he remained until his death, a partner in the firm known and operated as T. Aucoin Sons, which was domiciled in the Parish of St. Mary, and composed of himself and his brother Joseph S. Aucoin. That during the existence of the said partnership, there was acquired by it and in its name on November 1, 1939, a certain tract of land situated in Sec. 31, T. 15 S.R. 14 E., in the Parish of Assumption, containing 24 arpents and that on July 6, 1940 Albert Aucoin and Joseph S. Aucoin executed a deed or transfer of the same property in the name of Joseph Aucoin and placed the same of record in the Parish of Assumption. They aver that they were ignorant of these two transactions and did not discover their existence until about June 5, 1946 when Joseph Aucoin referred to them in his testimony being given in certain proceedings instituted in the Parish of St. Mary seeking an annullment of sales affecting other properties situated in that Parish.
They aver that the sale of the property to T. Aucoin Sons constituted it partnership property and made it owned partly by Albert N. Aucoin and partly by Joseph S. Aucoin and that Joseph Aucoin's wife having died in the meantime, survived by an only child, Francis Aucoin, the property was then owned by the Succession of Albert N. Aucoin in the proportion of an undivided one-half and by Joseph Aucoin and Francis Aucoin in the proportion of the other undivided half jointly.
They then allege that at the time of the execution of the said sales, they, the widow and daughter of Albert Aucoin, were not living with him as the plaintiff, Mrs. Doveline Snell Aucoin, had been separated from him during the year 1922, had taken her child with her and had since that time lived in the Parish of Lafayette and had no communication with the said Albert N. Aucoin ever since. They aver that Joseph and Albert Aucoin were brothers who lived very *Page 821 
close together, constantly planning and discussing family and business matters and that when Albert Aucoin died Joseph Aucoin took charge and possession of all of the property and of Albert Aucoin's private papers and documents, particularly of an old trunk in which he kept all of his private papers and that he has never turned over to your petitioners any of the said papers or documents.
They aver that the property involved in this suit has been and is now under lease to the Sun Oil Company and that it yields a rental of $50 per arpent per annum, which lease neither of them have ever signed or approved but in which they are entitled to an accounting.
They next allege that in the month of June, 1940, one Frank Fryou filed a suit against Albert Aucoin and Joseph Aucoin and the partnership of T. Aucoin Sons for compensation for an injury received by him in a syrup mill in which he was working and that in order to defeat his claim Joseph Aucoin and Albert Aucoin executed a simulated sale claiming that the partnership of T. Aucoin Sons had been dissolved since 1923 and that the syrup mill where Frank Fryou worked belonged exclusively to Albert Aucoin; that likewise at that time Albert Aucoin had contracted obligations to other parties and that he was endeavoring to place the property beyond their reach as well as beyond the reach of his wife who was not separated from him in community and therefore the said pretended sale of his interest in the partnership to Joseph Aucoin was a sham and a fraud between them for the purpose of evading the creditors of Albert N. Aucoin as well as the claims of his widow in community and his daughter as his heir. They specifically aver that the sale made on July 6, 1940, from Albert N. Aucoin to Joseph Aucoin of the property involved in this particular suit is null and void for the reasons already set out and for the further reason that no price whatever was paid by Joseph Aucoin for the same to Albert Aucoin and that even if the alleged price of $3 appearing in the act of sale was true, the same does not constitute a genuine consideration but was merely a sham and a fraud stipulated for the purpose of pretending that a consideration had been paid, and further that if that amount was actually paid the same is much less than half of the value of the property and the sale should be annulled for lesion beyond moiety.
Exceptions of want of jurisdiction in the district court, of vagueness and of no cause of action, and pleas of estoppel and res adjudicata were filed on behalf of the defendant which were all overruled by the court. Under reservation, the defendant then filed an answer denying mostly all of the allegations contained in the plaintiffs' petition but admitting the two sales which are directly attacked in this suit and admitting further that no consideration was paid in the sale from Albert N. Aucoin to him for the reason that he owed no consideration to Albert Aucoin as he had paid the full and entire consideration of $600 when the property was first purchased on November 1, 1939, and the deed was erroneously drawn in the name of T. Aucoin Sons and signed by Albert N. Aucoin. He specifically avers that the partnership of T. Aucoin Sons has not existed since the year 1923 when he bought out the interest of Albert Aucoin, his brother, who was the sole remaining partner besides himself; that since then he personally has continued to conduct his personal business under the style of T. Aucoin Sons, and that the very check given by him in payment of the property involved in this suit, was a check drawn on an account carried in that name and which is his personal account and that Albert Aucoin had no interest whatsoever in the property. He avers that at the time of the purchase of this property he was unable to appear himself before the Notary Public in Morgan City to sign and execute the deed and he commissioned his brother as his agent to do so; that instead of putting the property in his own name it was placed in the name of T. Aucoin Sons and that later when he discovered the error that had been made, he and his brother both appeared before the same Notary in order to have the deed corrected. That the Notary, whose ability he trusted, instead of making a correction deed, made the transfer in the form of a cash sale as it appears with the consideration of $3 being therein stipulated. That the amount of $3 was never paid for the *Page 822 
reason that he did not owe any consideration, the property already being his and all that was intended to do was to transfer title from the manner in which it appeared on the Conveyance Records of Assumption Parish to his own personal name as it presently exists.
[1] Some of the pleas and exceptions urged by defendant appear to have been abandoned but it is still urgently stressed on his behalf that the judgment rendered by the district court of St. Mary Parish, and affirmed by this court, in the Fryou case, Fryou v. T. Aucoin Sons, La. App., 5 So.2d 193, settled once and for all time, the question of the dissolution of the partnership of T. Aucoin Sons, and that that judgment constitutes res adjudicata in this case. With this contention however, we are unable to agree as after all, the judgment rendered in a case operates as res adjudicata only as between the parties to the suit and only with respect to what was the object of the judgment rendered.
[2, 3] Article 2286 of the Civil Code, the pertinent law in Louisiana on the subject, reads as follows: "The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; that demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality." True it is that in some cases the court extended the effect of the judgment to the privies of the parties involved in the suit but that rule cannot be applied in this case because there is no privity existing between the plaintiff in the Fryou suit and the widow in community and daughter of Albert Aucoin, the plaintiffs in this suit, and neither is this suit founded on the same cause of action as the plaintiff in the Fryou case was suing for workmen's compensation whereas the demand here is for the setting aside of a sale of real estate on the ground of fraud. The article of the Code provides that "the authority of the thing adjudged takes place only with respect to what was the object of the judgment" and in the case of State v. American Sugar Refining Co. 108 La. 603, 32 So. 965, 966, the court stated "the law by virtue of which the object of the judgment is delivered is no part of the object of the judgment." The question of the dissolution of the partnership of T. Aucoin 
Sons which was injected in the Fryou case and considered by the court may well have been one of the reasons for the judgment rendered in that case but, as also stated in the American Sugar Refining Co. case, just cited, "res adjudicata does not take place with respect to the reasons for judgment" and further, "res adjudicata deals, if we may so express ourselves, with the decree of the court, as contradistinguished from the judgment of the court." See also State ex rel. Puritan Co., Ltd. v. City of New Orleans, 169 La. 365, 125 So. 273. Guided by the principles enunciated in those two cases and others cited in each, we hold that the plea of res adjudicata as invoked in this case cannot apply.
We come now to consider the case on the merits, on which point the district judge ruled in favor of the defendant and dismissed the suit of the plaintiff.
[4] Notwithstanding the fact that the plea of res adjudicata cannot be successfully invoked we do feel as though the reasons stated for the judgment rendered in the Fryou case can be considered as an element of proof in this case. It would seem, as a matter of fact, that this court could hardly overlook that case as it is referred to by the plaintiffs in their petition and also it is a matter of record before this court. Plaintiffs contend that the sale of his interest by Albert Aucoin, as shown in the Fryou case, was, even at that time, a sham and a fraud and a subterfuge to deprive his widow of her community rights in his property and the question now is whether in this ease they have succeeded in showing that it was such a sham and fraud. To do that, they undertook to show that Albert Aucoin, even if he was supposed to have sold out his interest in the partnership continued to maintain an active interest in its affairs, lived and died on the property which he is supposed to have sold his interest in to his brother, and so conducted himself on the outside and toward his friends as to lead all to believe that he still shared in the profits of the partnership and even referred at:times, to the properties which he owned. Most of this testimony was refuted by other *Page 823 
witnesses and the trial judge evidently did not believe it. As a matter of fact he states in his written opinion that he had no reason to doubt the testimony of the defendant Joseph Aucoin and on the other hand is rather critical in his appraisal of the testimony of one of the plaintiffs' principal witnesses. We take the liberty of quoting his written reasons on his findings of fact in the case:
"The testimony of Joseph S. Aucoin in the Court's opinion, shows conclusively, that he bought out Albert's interest, in the mercantile business in 1923; that he continued the business and is still doing business under the trade name of T. Aucoin Sons. This evidence, in the Court's opinion, is uncontradicted and disproves paragraph 2 of plaintiffs' petition which alleges that Albert was a partner of Joseph Aucoin until his death.
"The evidence further shows that when his brother, Albert, informed him, Joseph, that Michel Dupre wanted to sell the property in litigation and the price thereof he, Joseph, being busy and unable to go to Morgan City to pass the sale, gave his brother, Albert, his check for $600.00, to purchase the property for him.
"Joseph's testimony is corroborated by Michel Dupre who testified that he had to wait for Albert who had to go get the money (Exhibit P. 1). If Joseph Aucoin's testimony is true, then this property was bought and paid for with his own money and belongs to him. The check proves this (P. 1). Joseph Aucoin testifies that Albert and Dupre went to Mr. Charles Bibbins, a Notary Public who passed the sale to T. Aucoin Sons, a co-partnership composed of Joseph S. Aucoin and Albert N. Aucoin. That the property so remained until he, Joseph Aucoin, inquired about his taxes, some eight months later, when he was told that the property was assessed to T. Aucoin Sons, and not to Joseph Aucoin; that he and his brother went to the Notary to have the deed corrected, whereupon Mr. Bibbins, the Notary passed a sale of Albert's purported 1/2 interest to Joseph Aucoin, for a consideration of $3.00 which Joseph Aucoin admits was not paid; he testified that no consideration was necessary as he was not buying any property from Albert, and the Notary told them that the sale was a correction deed. Mr. Bibbins, the evidence shows, was a Notary, and not a lawyer, and executed what he considered a deed of correction, in the Court's opinion. * * *
"The court does not know Mr. Joseph Aucoin, but has no reason not to believe his testimony.
"The evidence further shows that Albert Aucoin had a half interest in the Aucoin Dairy, and that he sold his interest to Joseph Aucoin in 1940, and that Albert died on April 11th, 1942. To dispute this fact and to show that Albert Aucoin Owned this dairy at his death, and that Albert had purchased the property in litigation, the plaintiffs themselves testified and called Mr. John Siracusa, as a witness. The evidence of plaintiffs show that after the separation in 1922, Mrs. Aucoin and her daughter moved to another parish, had nothing to do with him, Albert, and knew very little of Mr. Albert's business; and testified about an old trunk, which disappeared, and which was supposed to have contained documents relative to Mr. Albert's business. None of the other witnesses knew or had heard of this old trunk. The evidence of both plaintiffs is not convincing, and in the court's opinion, prove none of the allegations of their Petition. * * *
"The testimony of Mr. Siracusa, plaintiff's main witness, is amazing; the Court uses this word because it wants to be charitable. He testified that he and Albert Aucoin were very friendly, a fact denied by all other witnesses. That Albert told him all of his business, because, Siracusa says, it seemed to relieve his, Albert's mind; that Albert owned the dairy and the land on which the dairy was located; that Albert showed him, Siracusa, all his property, cows, barns, etc., one year before his death and told him that the property pointed out was all his, Albert's; that Albert told him that he had bought the Michel Dupre property (the property in dispute) and yet we find Siracusa testifying to, and admitting the following facts: That after Albert Aucoin died, he, Siracusa, believed the dairy was the property of Albert Aucoin, but nevertheless bought it from Joseph Aucoin for $3000.00, because, he says, Joseph Aucoin, *Page 824 
guaranteed to make the money good; that he, Siracusa, wanted and offered to buy the 75-acres; back of the railroad, on which the dairy was situated for $15,000.00, but Joseph Aucoin would not sell it to him. (And this is the property, he says, Albert, pointed out as belonging to him, the year before). This is the witness who, the plaintiffs contend prove their case and proves that the Dupre property, in litigation, was bought by and belonged to Albert Aucoin.
"Well, the Court is of a different opinion. The Court does not know Mr. Siracusa, but such testimony is beyond belief, and the Court is of the opinion that the plaintiffs have utterly failed to prove their case."
[5] We have carefully considered all the evidence in the case, and on the record as it is presently made up, we agree with the learned trial judge on his finding of facts.
However, counsel for plaintiffs now urges before this court that he has discovered other proof which shows beyond question that the defendant is unworthy of belief, such proof consisting of various documents which were signed by him between the time of the alleged dissolution of the partnership of T. Aucoin 
Sons in 1923 and the time the sale of the property involved in this suit took place. As a consequence, he has filed a motion to remand the case to the district court and has annexed thereto certain documents which, in the motion, it is averred were discovered subsequent to the judgment rendered below and to the time this appeal was perfected.
[6] The documents are all matters of public record relating to law suits, to sales of properties and one to an oil lease. One of them is an affidavit, verifying the allegations of a petition in a certain suit in St. Mary Parish, which affidavit was made before the present counsel himself, as notary, and another is a lease which apparently is the same lease that is referred to in the Fryou case with which counsel seems to be thoroughly familiar. The other documents relate to a lawsuit which came on appeal from the district court of St. Mary 'Parish to this' court and then went on certiorari to the Supreme Court of the State, the opinion of each court being duly reported in published opinions of both. We learn from the record in the present suit that there are several suits pending in the district, court of St. Mary Parish, some of which have been partially tried, involving the same issues as are here presented and it is difficult for us to believe that, as assiduous a lawyer as counsel for plaintiff is, he would not previously have informed himself of all the matters to which these documents relate. All the documents were public records and were readily available to any one interested in procuring them at any time. We do not think we would be justified in remanding the case for their introduction in the record and therefore overrule the motion to remand.
Counsel has also filed a plea of prescription and an exception of no cause of action to what he claims is the demand of the defendant to have the deed of July 6, 1940, from Albert Aucoin to himself, reformed. Defendant however makes no such demand. We presume that he is satisfied with the present status of the title to the property since it rests in his name and in his pleadings he has not asked for judgment correcting or reforming any deed. These pleas are likewise overruled.
Finding the judgment appealed from to be correct, it is, for the reasons herein stated, affirmed at the costs of the plaintiffs, appellants herein. *Page 924